UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON ARGUE,

          Plaintiff,                            Hon. Paul L. Maloney

v.                                       Case No. 1:08 CV 186

DAVE BURNETT, et al.,

          Defendants.

_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry's Motion for Summary Judgment. (Dkt. #19). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

**BACKGROUND**

        The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On June 5, 2005, Plaintiff, who was incarcerated at the Brooks Correctional Facility (LRF), requested that he be transferred to a facility at which he could attend Jewish religious services. (Dkt. #1, Ex. B). On June 26, 2005, Plaintiff executed a "Declaration of Religious Preference" form in which he claimed to be a member of the "Jewish" faith group. (Dkt. #1, Ex. A). On July 15, 2005, Defendant Burnett denied Plaintiff's request to receive Kosher meals. (Dkt. #1 at ¶ 3; Dkt. #1, Ex. D). Plaintiff subsequently "appealed" the matter to Defendants Smith, D'Epifanio, and Berghuis without success. (Dkt. #1 at ¶ 6).

Petitioner was later transferred to another facility in retaliation for "his constant requests to be placed upon a Kosher diet." (Dkt. #1 at ¶ 7). After a "short period of time" Plaintiff was transferred back to LRF. (Dkt. #1 at ¶ 8). Upon his return to LRF, Plaintiff again requested that he be permitted to receive Kosher meals. (Dkt. #1 at ¶ 8). Plaintiff "never received a response" to his request. (Dkt. #1 at ¶ 8).

On January 10, 2006, Plaintiff wrote to Defendant Chappee requesting a transfer because he was "being denied" the ability to participate in Jewish religious services and receive Kosher meals. (Dkt. #1, Ex. E). On July 10, 2006, Plaintiff again requested that he be transferred to a facility that "could accommodate his religious dietary needs." (Dkt. #1 at ¶ 22). Plaintiff was later transferred to the Muskegon Correctional Facility (MCF). (Dkt. #1 at ¶ 21). On or about August 10, 2006, Plaintiff submitted a request to the MCF Chaplain requesting that he be permitted to receive Kosher meals. (Dkt. #1 at ¶ 24). Defendant Burnett denied Plaintiff's request on August 18, 2006. (Dkt. #1, Ex. J).

On September 9, 2006, Plaintiff sent a letter to several Defendants (as well as MDOC Director Patricia Caruso) requesting that he "be allowed to follow his religious beliefs and practices." (Dkt. #1 at ¶ 28). In this letter, Plaintiff alleged that Defendant Burnett had improperly denied his requests to receive Kosher meals. (Dkt. #1, Ex. L). On September 14, 2006, Defendant Harry responded to Plaintiff's letter, informing Plaintiff that

> Regarding your Kosher Meal denial, you will need to take this issue up with Dave Burnett, Special Activities Coordinator, CFA, Lansing. Mr. Burnett is in charge of determining whether a prisoner will be allowed to participate in the Kosher Diet. You should send your appeal to him for reconsideration.

(Dkt. #1, Ex. M).

On September 26, 2006, Plaintiff wrote to Defendant Burnett again requesting that he be permitted to receive Kosher meals. (Dkt. #1, Ex. N). Plaintiff has not indicated whether Defendant Burnett approved or disapproved this particular request.

On February 26, 2008, Plaintiff initiated the present action against fifteen defendants. (Dkt. #1). Plaintiff asserts that Defendants have violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying his requests to receive Kosher meals. Plaintiff asserts that Defendants transferred him from the Brooks Correctional Facility for improper retaliatory reasons. Plaintiff also asserts that Defendants' actions have denied him the right to the equal protection of the law. Finally, Plaintiff claims that Defendants have slandered him by falsely claiming that he is homosexual. Of the fifteen defendants named in Plaintiff's action, only nine have been properly served. These nine defendants now move for summary judgment and/or dismissal of Plaintiff's claims. For the reasons discussed below, the Court recommends that Defendants' motion be granted in part and denied in part. The Court further recommends that Plaintiff's claims against the six remaining defendants be dismissed for failure to timely effect service.

## RELEVANT LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also, Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

I.          **Eleventh Amendment Immunity**

In his complaint, Plaintiff states that he is suing Defendants in both their personal and official capacities.  (Dkt. #1 at 1).  Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry assert that they are entitled to immunity under the Eleventh Amendment as to those claims asserted against them in their official capacity.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000).  Accordingly, the Eleventh Amendment generally precludes federal court actions

against a State unless that state has waived its sovereign immunity or consented to suit in federal court. *See Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

An exception to this general rule exists, however, for claims seeking prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). In this matter, Plaintiff seeks both injunctive and monetary relief. (Dkt. #1 at 4).

To the extent that Plaintiff seeks monetary relief against Defendants in their official capacity, the Court finds that they are entitled to immunity under the Eleventh Amendment. The Court further finds, however, that to the extent Plaintiff seeks prospective injunctive relief, these Defendants are not entitled to Eleventh Amendment immunity. Accordingly, the Court recommends that Plaintiff's claims for monetary damages asserted against Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry in their official capacity be dismissed.

## II.       Plaintiff's First Amendment and RLUIPA Claims

Plaintiff asserts that Defendants violated his rights under RLUIPA and the First Amendment by refusing his requests to receive Kosher meals. Defendant Burnett asserts that he is entitled to qualified immunity as to these claims. Defendants Armstrong, Anderson, Berghuis, Smith,

Minnerick, Chaffee, Harry, and Henry assert that Plaintiff has failed to state a claim against them on

which relief may be granted, and further assert that they are entitled to qualified immunity.


A.      Defendant Burnett

Defendant Burnett asserts that he is entitled to qualified immunity as to Plaintiff's First

Amendment and RLUIPA claims.  The doctrine of qualified immunity recognizes that government

officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*,

468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate

when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly

terminated.  *Id.*

Generally, when government officials perform discretionary functions, they are shielded

from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question of whether

a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v.*

*Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001); *Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996).

When evaluating claims of qualified immunity, the Court employs a two-step analysis.

First, the Court must determine whether Plaintiff's allegations, interpreted in a light most favorable to

Plaintiff, establish that Defendant violated Plaintiff's rights.  *Fisher v. Harden*, 398 F.3d 837, 842 (6th

Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If Plaintiff's allegations fail to establish

a violation of his rights, Defendant is entitled to immunity.  *Fisher*, 398 F.3d at 842 (quoting *Saucier*,

533 U.S. at 201).  However, if Plaintiff's allegations state a claim of constitutional violation, the Court

must determine whether the right in question was "clearly established." *Fisher*, 398 F.3d at 842 (quoting *Saucier*, 533 U.S. at 201).

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether an official is entitled to qualified immunity, the focus is on the objective legal reasonableness of the official's actions in light of clearly established law as it existed as when Defendant engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,* 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Defendant Burnett has not contested that Plaintiff's allegations state a claim for violation of his rights under the First Amendment and RLUIPA. Rather, Defendant Burnett claims that he is entitled to qualified immunity because "he did not act unreasonably in denying kosher meals to the

plaintiff."  In support of this argument, Defendant relies on an August 18, 2006 memorandum that he allegedly authored.  Defendant Burnett's argument is unpersuasive for two reasons.

First, Defendant's argument reflects a misunderstanding of the qualified immunity analysis.  As discussed above, when evaluating Defendant Burnett's claim that he is entitled to qualified immunity, the question is whether Plaintiff's allegations state a claim for a violation of his rights and, if so, whether the existence of such rights was clearly established when Defendant engaged in the alleged wrongful conduct.  Whether Defendant Burnett can ultimately demonstrate that he is entitled to prevail as a matter of law is irrelevant when evaluating his claim of qualified immunity.  Furthermore, even assuming that consideration of the aforementioned memorandum is relevant in the qualified immunity analysis, such would still not entitle Defendant Burnett to the relief he seeks.  Because the memorandum in question has not been authenticated, it is inadmissible, *see* Fed. R. Evid. 901, and fails to establish that Defendant Burnett "did not act unreasonably."  The Court recommends, therefore, that Defendant Burnett is not entitled to qualified immunity.

        B.      Defendants Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry

These Defendants assert that Plaintiff's First Amendment and RLUIPA claims must be dismissed because such claims fail to state a claim upon which relief may be granted.  Defendants claim that they are entitled to relief because "they had no involvement in the denial of kosher-meal approval for the plaintiff because they lacked authority to approve a prisoner for kosher meals."  They further assert that Defendant Burnett "was the only defendant with the authority to grant or deny the plaintiff's kosher-meal requests."  In support of their argument, Defendants have not identified any deficiency in

Plaintiff's complaint, but instead have submitted a copy of an MDOC Policy Directive which they claim proves that they were not involved in the decision to deny Plaintiff's request for Kosher meals.

As previously noted, a motion to dismiss for failure to state a claim upon which relief may be granted tests the sufficiency of the allegations contained in Plaintiff's complaint. When evaluating a motion to dismiss, the Court can consider "matters outside the pleadings," but when doing so it is generally required to treat the motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, the Court "may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). The Court finds that the Policy Directives issued by the Michigan Department of Corrections constitute a public record as that term is used in Rule 12(d). Accordingly, the Court may consider Defendants' submission without transforming their motion into one governed by Rule 56.

Defendants rely on the portion of the Policy Directive that provides that "[a] prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator." (Mich. Dep't of Corrections Policy Directive 05.03.150, Religious Beliefs and Practices of Prisoners, ¶ TT (effective May 24, 2004). Plaintiff does not dispute that Defendant Burnett was the Special Activities Coordinator during the relevant time period. The Court fails to discern, however, how this provision establishes that these particular Defendants "had no involvement in the denial of kosher-meal approval."

That Plaintiff can receive Kosher meals only if Defendant Burnett approves hardly forecloses the possibility that these Defendants played an active role in denying Plaintiff's requests for Kosher meals. As the Policy Directive quoted above further provides, "[t]o request approval [to eat from a religious menu], the prisoner must submit a written request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior

ro referring the request to the CFA Special Activities Coordinator." *Id.* at ¶ TT.  It certainly stands to reason that the information obtained pursuant to this policy could inform or support a decision by the Special Activities Coordinator to deny a prisoner's request to eat from a religious menu.  Thus, this Policy Directive does not establish that Defendants played no active role in the decision to deny Plaintiff's requests for Kosher meals.

In sum, Defendants Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry assert that Plaintiff cannot establish that they played an active role in the decision to deny Plaintiff's request for Kosher meals.  As discussed above, the Court finds that Defendants' argument falls short.  Accordingly, the Court recommends that the motion to dismiss asserted by Defendants Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry be denied.

These Defendants also assert that they are entitled to qualified immunity because they "were not involved in the denial of kosher meals to the plaintiff."  Defendants' argument fails.  As previously noted, whether Defendants can establish that they were not involved in denying Plaintiff's requests for kosher meals is not relevant.  The relevant question in the context of a request for qualified immunity is whether Plaintiff's allegations state a claim for a violation of his rights and, if so, whether the existence of such rights was clearly established when Defendants engaged in the alleged wrongful conduct.  Plaintiff's allegations do state a claim and Defendants do not challenge that the right in question was clearly establish when they allegedly acted.  Moreover, even assuming that whether Defendants were involved in the decision to deny Plaintiff's requests to receive Kosher meals was a relevant consideration, Defendants have failed to establish that they were not involved in this decision. The Court recommends, therefore, that Defendants Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry are not entitled to qualified immunity.

**III.**          **Plaintiff's Retaliation Claims**

Plaintiff asserts that he was transferred from the Brooks Correctional Facility in retaliation for repeatedly requesting to receive Kosher meals. Plaintiff further alleges that "[a]s part of their denial of Plaintiff's kosher diet, Defendants slanderously placed in Plaintiff's file the false claim he is a homosexual." Defendants have interpreted this latter allegation as asserting a claim of retaliation. The Court finds this to be a liberal, but nonetheless appropriate, interpretation. Defendants assert that Plaintiff's retaliation allegations fail to state a claim upon which relief may be granted.

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

1.          Protected Conduct

Defendants do not claim that Plaintiff was not engaged in protected conduct. Plaintiff asserts that he was retaliated against for requesting that prison officials stop violating his First Amendment right to freely practice his religion. In the absence of evidence that Plaintiff's requests were frivolous, the Court finds that Plaintiff was engaged in protected conduct.

2.          Adverse Action Which Would Deter a Person of Ordinary Firmness

It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)).  Thus, unless there exist "foreseeable consequences" to a transfer that would inhibit the prisoner's ability to engage in protected conduct, such a transfer does not constitute an "adverse action" for purposes of the retaliation analysis. *Hix*, 196 Fed. Appx. at 358 (citing *Siggers-El*, 412 F.3d at 701-04).  As Defendants observe, Plaintiff has not alleged that the decision to transfer him inhibited his ability to engage in protected conduct or otherwise placed him at risk.  Thus, as for Plaintiff's claim that he was transferred for retaliatory reasons, the Court finds that Plaintiff's complaint is fatally deficient.

The Court reaches the opposite conclusion with respect to Plaintiff's claim that he was designated a homosexual in retaliation for requesting Kosher meals.  As the Sixth Circuit has indicated, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).  As the *Bell* court further stated, "while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out *only inconsequential actions*." *Id.* at 603.  Accordingly, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Id.*  Designating an inmate as homosexual constitutes neither an inconsequential nor de minimis action, as such could certainly subject the inmate to violence or other forms of mistreatment by other prisoners or staff members.

With respect to this claim, Defendants assert that "Plaintiff has not suffered an adverse action."  In support of this argument, Defendants present an analysis of the document on which Plaintiff's claim is based.  As part of his complaint, Plaintiff has included copies of three separate MDOC documents concerning Plaintiff in which the word "JEW" is printed in (or in close proximity to) the box to be selected to designate a prisoner as homosexual.  (Dkt. #1, Ex. O).  It is clear from Plaintiff's complaint that this particular retaliation claim is based entirely on these three documents.  Defendants assert that "[i]t is clear that a printer misalignment, and not retaliation, is responsible for the code 'JEW' being printed slightly above the religion box."

While this appears to be an entirely plausible explanation, the Court notes that Defendants have submitted *absolutely no evidence in support thereof*.  While the Court finds Defendants' explanation quite plausible, Plaintiff might very well argue that the documents were purposely printed in that manner to indicate that he is a Jewish homosexual.  The Court simply cannot resolve such factual issues in favor of Defendants when they refuse to submit even one tiny shred of *evidence* in support of their position or interpretation.  Accordingly, the Court finds that there exist unresolved questions of fact regarding this element of this particular retaliation claim.

### 3.  Causal Connection

Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged.  In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that she "would have taken the same action even without the protected activity," she is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Aside from stating in conclusory fashion that he was retaliated against, Plaintiff asserts no factual allegation that his protected conduct was a motivating factor in the decision to transfer him or designate him as a homosexual.  As Defendants observe, with respect to the causation element Plaintiff offers nothing more than "bare allegations of malice."  Such fails to state a claim on which relief may be granted.  *See, e.g., McMillan v. Fielding*, 136 Fed. Appx. 818, 820-21 (6th Cir., June 7, 2005) (holding that dismissal for failure to state a claim is appropriate where the plaintiff's allegations regarding causation "were purely conclusory") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In sum, as discussed above, the Court recommends that both of Plaintiff's retaliation claims, asserted against Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry, be dismissed for failure to state a claim upon which relief may be granted.

**IV.**          **Equal Protection Claim**

Plaintiff asserts that because "other prisoners of the Jewish faith" are permitted to receive kosher meals while he is denied such, Defendants have violated his right to the equal protection of the laws.  Defendants move to dismiss this claim on the ground that it fails to state a claim upon which relief may be granted.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Accordingly, the state "cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005) (citations omitted).

Plaintiff asserts that "he is being denied equal protection of the law as other prisoners of the Jewish faith within the MDOC are allowed to practice their sincerely held religious beliefs by being allowed to eat Kosher meals."  Noting Plaintiff's acknowledgment that certain Jewish prisoners are receiving Kosher meals, Defendants assert that Plaintiff's claim fails because Plaintiff "does not allege that he is being denied any privilege because of his membership in a protected class."  While not clearly stated, Defendants appear to take the position that since other Jewish prisoners apparently do receive Kosher meals Plaintiff cannot establish that he suffered disparate treatment *because of* his membership in the protected class of Jewish prisoners.  Stated differently, Defendants appear to take the position that a member of a protected class can state a claim for denial of equal protection only if no other member of that protected class has suffered the injury in question.  To adopt such logic would permit the State

to deny equal protection to any member of a protected group, so long as one such group member was not denied equal protection of the law. Defendants have cited no authority in support of this proposition.

The Court need not, however, tackle the apparent shortcoming of Defendants' argument because their motion fails for a more fundamental reason. In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the United States Supreme Court recognized the following:

> Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

*Id.* at 564.

This statement captures the essence of Plaintiff's claim. Plaintiff alleges that Defendants have intentionally refused to provide him with Kosher meals, while simultaneously providing Kosher meals to similarly situated Jewish prisoners, and that there exists no rational basis for this difference in treatment. While Plaintiff's complaint is neither artfully written nor long on factual assertions, the Court finds that Plaintiff has alleged facts which if proven would demonstrate that he has suffered a violation of his right to the equal protection of the laws. Accordingly, the Court recommends that Defendants' motion to dismiss this claim be denied.

## V.        Plaintiff's Claims Against the Remaining Defendants

Plaintiff initiated the present action on February 26, 2008. On March 28, 2008, the Court directed that Plaintiff's complaint be served on Defendants. Service was subsequently effected on Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry. However, the attempt to effect service on Defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio was unsuccessful. While more than nine months have passed since the initiation of this

action, Plaintiff has failed to request an extension of time to effect service on Defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence in this matter, the Court recommends that Plaintiff's claims against Defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

As discussed herein, the Court recommends that <u>Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry's Motion for Summary Judgment</u>, (dkt. #19), be **granted in part and denied in part**.

Specifically, the Court recommends that Plaintiff's claims against Defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio be dismissed without prejudice for Plaintiff's failure to timely effect service. The Court recommends that Plaintiff's claims for monetary damages asserted against Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry in their official capacity be dismissed. The Court recommends that Plaintiff's retaliation claims against Defendants Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry be dismissed. The Court further recommends that the remaining claims asserted in Plaintiff's complaint go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  January 23, 2009                    /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge