UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SHANNON ARGUE #180822,

    Plaintiff,

    v.

DAVE BURNETT, MDOC Special Activities Director,
in his personal capacity and in his official capacity,

    Defendant.[1]

Case No. 1:08-cv-186

HONORABLE PAUL L. MALONEY

Magistrate Judge Carmody

---

**OPINION and ORDER**

**Overruling the Plaintiff's Objections;**
**Sustaining in Part and Overruling in Part the Defendants' Objections;**
**Adopting the R&R in Part and Rejecting it in Part;**
**Dismissing All Defendants Except Burnett;**

**Dismissing 1st-Amendment Retaliation Claim as to All Defendants for Failure to State a Claim;**
**Dismissing Class-of-One Equal Protection Claim as to All Defendants for Failure to State a Claim;**

**Dismissing Money-Damage Claims as to All Defendants in Their Official Capacities;**
**Denying Plaintiff's Request for Additional Time and Assistance to Serve Some Defendants**

---

[1]

Fourteen defendants are dismissed today, so they no longer appear in the caption.

Six are being dismissed without prejudice due to lack of service: Unknown D'Epifanio, Asst. Deputy Warden; Unknown Swierenga, Chaplin; Unknown Malone, Asst. Deputy Warden, Unknown Aardsma, Chaplin; Unknown Shields, Counsellor; and UNKNOWN Chappee.

Eight are being dismissed *with* prejudice on the merits of Argue's claims: Wardens Mary Berghuis and S. Harry, Deputy Wardens R. Smith and Terry Bradford, MDOC Administrator Jim Armstrong, Resident Unit Manager R. Anderson, Regular Unit Manager Anthony Henry, and Grievance Coordinator J. Minnerick.

Proceeding *pro se*,[2] Michigan state prisoner Shannon Argue filed the complaint in February 2008; with an extension of time the defendants jointly moved for summary judgment in September 2008, Argue filed an opposition brief in October 2008, and the defendants elected not to file a reply. Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on January 23, 2009, and the defendants filed timely objections on February 6, 2009. The court also finds that the defendants' objections are sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which they have objected.[3] On March 9, 2009, the court received Argue's motion for an extension of time in which to file objections; the court granted the motion by order dated March 10, 2009 and filed Argue's proposed objections *nunc pro tunc*.

The court will overrule Argue's objections and adopt most of the well-reasoned R&R. The court will reject a portion of the R&R, however, on the basis of the defendants' objections. For the reasons stated below, the court will dismiss all defendants except Burnett and will dismiss the

---

[2]

Argue filed a motion for appointment of counsel on February 4, 2009 [document #28], which the Magistrate Judge denied on February 6, 2009 [document #29]. Argue filed a motion for reconsideration before the Magistrate Judge on February 23, 2009 [document #34].

[3]

"'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (judge need not provide *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the . . . report that the district court must specifically consider")).

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.)).

retaliation claim for failure to state a claim on which relief can be granted. Surviving against Burnett are Argue's First Amendment / RLUIPA claim and his Equal Protection "class of one" claim.

**First, the court will adopt, without review, those portions of the R&R to which no party has objected.** *See, e.g., Heggie v. MDOC*, 2009 WL 594908, *2 (W.D. Mich. March 6, 2009) (Paul L. Maloney, C.J.) ("Where neither party has objected to a portion of the R&R, the court will adopt that portion of the R&R without review."); *Lopez v. SSA*, 2009 WL 261191, *2 (W.D. Mich. Feb. 4, 2009) ("[T]he failure to file timely specific objections obviates not only *de novo* district judge review of the R&R, but *all* district judge review.") (citing *Thomas v. Arn*, 470 U.S. 140, 141-42 and 149-50 (1985)); *Tangwall v. Robb*, 2003 WL 23142190, *1 (E.D. Mich. 2003) (Lawson, J.) ("[T]he failure to object to the Magistrate Judge's report releases the court from its duty to independently review the motion.").

**Argue objects to the recommendation that his claims against Shields, Bradford, Malone, Aardsma, and D'Epifanio be dismissed without prejudice for failure to effect service of process,** *see* R&R at 17-18. Argue contends that this "would create an undue hardship on him to have to re-file a Complaint and pay an additional filing fee to name the above Defendants." Argue's Objections at 3. Argue asks the court to "reissue the summons and allow Plaintiff another opportunity to serve Defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio." *Id.* He asserts that "[t]he court has the power to extend the time for filing pleadings" under FED. R. CIV. P. 4(m), FED. R. CIV. P. 6(b), and W.D. MICH. LCIVR 7.1(c).

<u>First, the court rejects Argue's invitation to extend the time for service of the complaint pursuant to FED. R. CIV. P. 6(b).</u> He relies on FED. R. CIV. P. 6(b)(1)(A), which provides as follows:

(1) In General. When an act may or must be done within a specified

> time, the court may, for good cause, extend the time (A) with or
> without motion or notice if the court acts, or if a request is made,
> before the original time or its extension expires; * * * .

But the plain language of this very rule defeats the plaintiff's argument. FED. R. CIV. P. 6(b)(1)(A) authorizes the court to extend the time "if a request is made, *before the original time or its extension expires*." Argue did not request an extension, or issuance of new summonses, before the expiration of the summonses, so FED. R. CIV. P. 6(b)(1)(A) is of no avail to him. *Contrast Newman v. Coats*, 2008 WL 4683430, *2 (E.D. Mich. Oct. 22, 2008) (Komives, M.J.) ("plaintiff's first (July 9, 2008) motion for enlargement of response time was filed before the due date of the response (July 30, 2008); therefore, FED. R. CIV. P. 6(b)(1)(A) governs plaintiff's request.").

The remainder of this subsection, which Argue does not mention, authorizes the court to extend a deadline "on motion made *after the time has expired*", as here, only "if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B); *see Rogalski v. Pramsteller*, 2008 WL 5102893, *1 (W.D. Mich. Dec. 1, 2008) (Scoville, M.J.) ("Under Rule 6(b)(1)(B) . . . , the court may grant an extension of time for good cause. Where, as here, the motion was made after the time has expired, the party must show that he failed to act 'because of excusable neglect.'"). "The determination of excusable neglect is 'an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Howard v. Nationwide prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266 (6th Cir. 2009) (Martin, McKeague, D.J. Collier) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

In determining whether neglect was excusable under this Rule, courts in our circuit typically consider five factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on the judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the party seeking the extension, and (5) whether the late-

filing party acted in good faith.  *Medina v. Columbus State Cmty. Coll.*, 2008 WL 4411522, *1 (S.D. Ohio Sept. 29, 2008) (Sargus, J.) (citing *Nafzinger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer*, 507 U.S. 380)), *recon. denied*, 2008 WL 2906135 (S.D. Ohio Nov. 13, 2008).  Our Circuit has cautioned that excusable neglect is a "strict standard which is met only in extraordinary cases."  *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006) (citing *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989)).  For the reasons discussed below, the court assumes *arguendo* that Argue acted in good faith, but he has not shown excusable neglect, FED. R. CIV. P. 6(b)(1)(B), or any other "good cause", FED. R. CIV. P. 4(m), for failing to effect service or seek an extension of time (or new summons or other assistance) before the expiration of the existing summons to the six unserved defendants.[4]

        Second, the court acknowledges that our Local Civil Rule 7.1(c) provides, in relevant part, "In its discretion, the Court may in a particular case shorten or enlarge any time limit or page limit established by these rules, with or without prior notice or motion."  But "these rules" refers to the Local Civil Rules, not to the Federal Rules of Civil Procedure.  Therefore, Local Civil Rule 7.1(c) does not purport to authorize the court to extend time limits established by the *Federal* Rules of Civil Procedure.

        Third, the court declines Argue's invitation to extend the time for service of the complaint on the unserved defendants pursuant to FED. R. CIV. P. 4(m).  That subsection states:

        If service of the summon[s] and complaint is not made upon a defendant within 120
        days after the filing of the complaint, the court, upon motion or on its own initiative

---

        [4]

        If Argue ever appeals this court's excusable-neglect determination, it will be reviewed only for abuse of discretion.  *See B.A. Const. & Mgmt., Inc. v. Knight Enters., Inc.*, – F. App'x –, 2010 WL 545504, *8 (6th Cir. Feb. 17, 2010) (Kethledge, J., concurring in the judgment) ("The district court did not find excusable neglect, a decision we review for an abuse of discretion.") (citing *Allen v. Murph*, 194 F.3d 722, 724 (6th Cir. 1999)).

after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  Under the final clause of FED. R. CIV. P. 4(m), the court would be obligated to extend the time for service if Argue showed good cause for failing to effect service during the 120-day life of the summonses.  *See generally CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.*, 521 F. Supp.2d 619, 621 (W.D. Mich. 2007) (Maloney, J.) ("[T]he word 'shall' always means that the action in question is mandatory, not optional.") (citing, *inter alia*, *US v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007)).  Under the preceding clause of FED. R. CIV. P. 4(m), the court is authorized, but not required, to "direct that service be effected within a specified [additional] time" rather than dismissing the complaint without prejudice as to unserved defendants.

Argue asserts that he has shown good cause for failing to effect service of the complaint on the six other defendants within the 120-day life of the summonses.  He argues as follows:

> While delay is certainly not encouraged, the Court often grants extensions of time where the delaying party has not shown bad-faith and the delay will not substantially prejudice the opposing party.  *See, e.g., Johnson v. Harpster*, 66 F.R.D. 103 (ED Tenn 1975); *Rooks v. American Brass Co.*, 26 F.3d 166 (6th Cir. 1959); *Schram v. O'Conner*, 2 F.R.D. 192 (ED Mich 1941).

> [T]he delay in serving the Defendants was due to no fault of his own.  Plaintiff provided this court wi[th] the address he had for the Defendants.  The Defendants may have changed jobs and as such since Plaintiff is incarcerated he does not have access to that information.  Plaintiff asks that he be given additional time in which to obtain these addresses and serve the above named Defendants.

Argue's Objections at 4-5.  While mindful of the unique obstacles and delays sometimes faced by incarcerated litigants, the court determines that Argue has not shown good cause for failing to effect service, or at least move for an extension of time or a new summons, before the summonses expired.  Summonses for the six unserved defendants were issued and delivered to the U.S. Marshals for

service on April 15, 2008, and were returned unexecuted on June 20, 2008 as to six defendants (Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio).  *See* Document 5.  More than eight months passed and Argue did nothing – so far as the record reflects – to try to have the remaining defendants served or to ask for an extension of time in which to serve them.  Even proceeding *pro se* and from within the confines of a prison, mere inaction or inadvertence generally will not excuse such a lack of reasonable diligence and attention.  *See, e.g., Dallio v. Hebert*, 2009 WL 2258964, *12 and *20-21 (N.D.N.Y. July 28, 2009) (although plaintiff was incarcerated and proceeding *pro se*, the court dismissed his claims against a certain defendant because he failed to effect service on that defendant within the time required by Fed. R. Civ. P. 4(m) and corresponding Local Civil Rule, noting elsewhere, "when a plaintiff is proceeding *pro se*, 'all normal rules of pleading are not absolutely suspended.'") (quoting *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp.2d 259, 262 and n.9 (S.D.N.Y. 1980)).  Therefore, the court will not issue new summonses or take other action with regard to the six unserved defendants at this late hour.

**Argue has not objected to the R&R's suggestion that his claims for monetary damages against all nine served defendants** – Burnett, Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry and Henry – **in their official capacities be dismissed due to sovereign immunity,** R&R at 5-6, and that outcome is required as well.  *See Jonaitis v. Morrison*, 2008 WL 151252, *2 (W.D. Mich. Jan. 14, 2008) (Maloney, J.) (the doctrine of sovereign immunity, which is represented by but is not derived solely from or limited by the Eleventh Amendment, bars money-damage claims against the State or against its employees in their official capacities, without regard to whether the plaintiff is a citizen of the state) (citing *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir. 2007) (citation omitted) and *Dixon v. Clem*, 492 F.3d 665, 673-74 (6th Cir. 2007) (citation omitted), *reh'g & reh'g en banc denied* (6th Cir. Nov. 23, 2007)).

With five defendants dismissed without prejudice for failure to effect service of process, there are nine defendants left in the case. Defendant Burnett alone seeks dismissal of the First Amendment / RLUIPA claim on the ground of qualified official immunity, while the other eight defendants contend that Argue fails to state a First Amendment / RLUIPA claim on which relief can be granted against them. **Nobody has objected to the R&R's conclusion that Burnett is not entitled to qualified immunity,** *see* R&R at 7-9, and the court adopts that conclusion essentially for the reasons stated by the Magistrate Judge.[5]

---

5

The R&R correctly states the qualified-immunity doctrine. *See* R&R at 7; *see also Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 493 (6th Cir. 2008) ("[P]ublic officials are entitled to be dismissed from a lawsuit on qualified immunity grounds if they can show that they did not violate any of the plaintiff's federal statutory or constitutional rights that were 'clearly established' at the time of the alleged misconduct and of which the defendants could reasonably have been expected to be aware.") (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

But this court rejects the notion that decisions which are not precedentially binding in this circuit can serve as "clearly established" law for this purpose. The R&R states that "[g]enerally, to find a clearly established constitutional right, the district court 'must find binding precedent by the Supreme Court, its Court of Appeal or itself.'" R&R at 8 (quoting *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 177-78 (6th Cir. 1988))).

The R&R relies on published Sixth Circuit decisions, *Fisher* and *Seiter*, but it is simply impossible to comply with such a statement of the law. A district court cannot "find binding precedent [issued] by . . . itself" because such precedent cannot exist. A district court decision is *never* precedentially binding. A district court decision binds neither the Court of Appeals, *see US v. Petroff-Kline*, – F.3d –, –, 2009 WL 510669, *4 (6th Cir. Mar. 3, 2009) ("as a district court opinion, it is non-precedential"); *US Student Ass'n Foundation v. Land*, 546 F.3d 373, 383 n.8 (6th Cir. 2008) ("prior district court cases do not bind this court"); *US v. Flores*, 477 F.3d 431, 437 (6th Cir. 2007) (Griffin, J.) ("*Johnson* is a district court opinion and, therefore, not binding on this court."), nor even other district judges, *see Heggie v. MDOC*, 2009 WL 36612, *4 with n.2 (W.D. Mich. Jan. 5, 2009) (collecting cases). Therefore, district court decisions cannot play any role in determining what law was "clearly established" for purposes of qualified immunity.

The same is true of unpublished decisions from our Court of Appeals, which also lack precedential value. *See Griffin v. Reznick*, 2008 WL 4741738, *12 n.12 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) ("[U]npublished decisions of the Circuit, such as *Pryor*, do not bind any court.") (citing *Williams v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir.) (Griffin, J.) ("Unpublished

**Defendants Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry and Henry object to the Magistrate's suggestion that Argue has stated a First Amendment / RLUIPA claim on which relief can be granted against them. This objection is valid.** These eight defendants contended that Burnett was the only official with the authority to grant or deny Argue's request for special religious meals, and that they in fact had no involvement in the decision to deny that request. *See* R&R at 9.

These eight defendants introduced Michigan Department of Corrections ("MDOC") Policy Directive 05.03.150, Religious Beliefs and Practices of Prisoners, effective May 24, 2004 ("the policy directive"). The Magistrate correctly noted that this court may consider a public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *See Horattas v. Citigroup Fin. Markets, Inc.*, 532 F. Supp.2d 891, 899 n.9 (W.D. Mich. 2007) (Maloney, J.) ("A court that is ruling on a 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or otherwise appropriate for the taking of judicial notice.") (quoting *New England HealthCare Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6ᵗʰ Cir. 2001) (citation omitted)); *see, e.g., Papasan v. Allain*, 478 U.S. 265, 2689 n.1 (1986) ("Although this case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we are not precluded in our review of the complaint from taking notice of items in the public record, such as documentation of the history of the Mississippi and other school lands [sic] grants."). Indeed, "MDOC's policy directives are matters of public record and can be considered by the court in

---

decisions of this court are not precedentially binding under the doctrine of *stare decisis*.") (citation omitted), *cert. denied sub nom. Welshhans v. Aetna Life Ins. Co.*, – U.S. –, 128 S.Ct. 671 (2007)).

Accordingly, when determining what law was "clearly established" for purposes of qualified official immunity, this court will look only to United States Supreme Court decisions and published decisions of the U.S. Court of Appeals for the Sixth Circuit.

connection with a Rule 12(b)(6) motion without converting the defendants' motion to dismiss into a motion for summary judgment." *Mullins v. Pramsteller*, 2008 WL 4822241, *3 (W.D. Mich. Nov. 3, 2008) (Maloney, C.J.) (citations omitted); *see also Mobley v. Smith*, 2007 WL 1650934, *3 n.3 (W.D. Mich. June 4, 2007) (Wendell Miles, Sr. J.) ("[T]he court's consideration of an MDOC policy directive does not convert the defendants' [12(b)(6)] motion into one for summary judgment.") (citing, *inter alia*, *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'")).

The policy directive provides, in pertinent part, "A prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator." R&R at 10 (quoting MDOC Policy Directive 05.03.150¶ TT). It is undisputed that only defendant Burnett was the CFA Special Activities Coordinator during the relevant time period, but the Magistrate reasoned as follows,

> The Court fails to discern, however, how this provision establishes that these particular Defendants "had no involvement in the denial of kosher-meal approval."
>
> That Plaintiff can receive [k]osher meals only if Defendant Burnett approves hardly forecloses the possibility that these Defendants played an active role in denying Plaintiff's requests for [k]osher meals. As the Policy Directive quoted above further provides, "[t]o request approval [to eat from a religious menu], the prisoner must submit a written request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator." *Id.* at TT. It certainly stands to reason that the information obtained pursuant to this policy could inform or support a decision by the Special Activities Coordinator to deny a prisoner's request to eat from a religious menu. Thus, this Policy Directive does not establish that Defendants played no active role in the decision to deny Plaintiff's requests for [k]osher meals.

R&R at 10-11.

The court respectfully declines to adopt the R&R on this score. The Magistrate is right to note that the policy directive's designation of Burnett as the only person with the authority to rule

on a religious-menu request does not necessarily foreclose the possibility that Burnett relied on input from some or all of the other defendants. But Argue's complaint does not even *allege* that any of these eight defendants played any active role in Burnett's decision to deny his request for a religious menu, whether by conveying information to Burnett about Argue's religious beliefs (Policy Directive ¶ TT) or otherwise.

On the contrary, the complaint and its attachments allege only that Burnett was in charge of approving or denying religious-meal requests; that Argue's request was sent to Lansing for review and denied by Burnett; that Argue was told when he could re-apply *to Burnett*; that Burnett denied Argue's renewed request; and that the warden (Harry) told Argue that the decision was Burnett's. *See* Comp ¶¶ 4, 5, 11, 25 and 29. Argue's complaint and attachments allege only that the other defendants did not overrule Burnett's denial of his request. Without even an *allegation* that any of these eight defendants were actively involved in Burnett's denial of Argue's meal request, it is not for the court to speculate or to craft the allegations needed to state a First Amendment / RLUIPA claim against defendants other than Burnett.

Without such an allegation, Argue has merely created a "suspicion of a legally cognizable cause of action" rather than raising his "right to relief above the speculative level." *Rishell v. Standard Life Ins. Co.*, 2009 WL 395884, *3 (W.D. Mich. Feb. 13, 2009) (Maloney, C.J.) (quoting *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969)). Because each defendant's active role in the alleged First Amendment / RLUIPA violation is a necessary element of the cause of action,[6] Argue's failure to actually allege

---

[6]

Of the eight remaining defendants other than Burnett himself, Berghuis and S. Harry are both named as the warden, R. Smith as deputy warden, while Armstrong is named as MDOC Administrator, B. Anderson as Resident Unit Manager, J. Minnerick as Grievance Coordinator, and Anthony Henry as Regular Unit Manager. i.e., they all held supervisory or managerial positions at

such a role means that the complaint fails to present "either direct or inferential allegations regarding all the material elements" of his First Amendment / RLUIPA claims against these eight defendants. *Rishell*, 2009 WL 395884 at *3 (quoting *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969)).

Given Argue's failure to carry that initial pleading burden, it is not the defendants' burden to prove a negative, namely, that they had no active personal role in Burnett's decision to deny Argue's menu requests. And it is not enough for Argue to allege merely that these eight defendants were aware of Burnett's actions and failed or refused to correct them. *See Bonga v. Caruso*, 2007 WL 1686366, *1 (W.D. Mich. June 8, 2007) (Bell, C.J.) (§ 1983 plaintiff "has merely alleged that the defendants Warden . . . , Deputy Warden . . . , and Assistant Deputy Warden . . . , 'knowingly and willfully failed to correct the actions of' their subordinates, thereby violating the Constitution. The Magistrate Judge correctly determined that these allegations are not sufficient to allege that these defendants 'played an active role in the alleged violations.'") (quoting *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002)); *Smothers v. MDOC*, 2007 WL 1280736 (W.D. Mich. Feb. 21, 2007) ( Carmody, M.J.) ("Plaintiff asserts that his transfer to the transition unit was undertaken for retaliatory purposes. However, plaintiff has presented neither allegation nor evidence that Defendant Smith played any active role in Plaintiff's transfer . . . . Liability cannot rest on Defendant Smith's status as the facility's warden, as Plaintiff must allege 'personal involvement'

_____

the relevant time and Argue seeks to hold them liable on that basis. This is significant, because "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002)) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). *See, e.g., Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009) (affirming summary judgment for prison official on section 1983 First Amendment / RLUIPA claim, stating, "Since the plaintiff does not allege that the defendant was actively involved in the denial of kosher food, we find that the district court's analysis of the issue was correct."), *pet. cert. filed*, 78 U.S.L.W. 3065 (U.S. July 22, 2009) (No. 09-109).

by Defendant Smith."), *R&R adopted as modified on other grounds*, 2007 WL 1238898 (W.D. Mich. Apr. 27, 2007) (Enslen, J.).

Therefore, all remaining defendants except decision maker Burnett are entitled to dismissal of the First Amendment / RLUIPA claims against them. For the same reason, all remaining defendants except Burnett are also entitled to dismissal of the Equal Protection claims against them.

**Argue's Retaliation Claims Fail.**

Argue objects to the Magistrate's recommendation that his First Amendment retaliation claims be dismissed for failure to state a claim, but the court is unpersuaded by his objection. Argue claims that in retaliation for his kosher meal requests, MDOC transferred him from the Brooks facility to another facility and checked a box on a form which could be taken to show that he is a homosexual. The latter designation, Argue alleges, can subject him to a greater risk of violence and harassment by other inmates. For purposes of today's opinion, the court assumes *arguendo* that that is a legitimate consideration for a male prisoner. *See generally Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (noting that in prison, "possession of homosexually explicit material may identify the possessor as homosexual and target him for assault") (citing I. Robbins, ed., Prisoners and the Law 3-14 (1988)); *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985) (noting that in earlier case "the denial of congregate religious services to a homosexual religious group was upheld because of the dangers of violence from predatory prisoners.") (discussing *Brown v. Johnson*, 743 F.2d 408, 411-12 (6th Cir. 1984)).

Argue concedes that the Magistrate correctly stated the elements of a First Amendment retaliation claim: (1) the plaintiff was engaged in constitutionally protected conduct; (2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in such protected conduct; and (3) the adverse action was motivated at least in part by the protected

conduct. *See* Argue's Objections at 2 and R&R at 12; *see also Harris v. Sodders*, 2009 WL 331633, *2 (6th Cir. 2009) (Ryan, <u>Siler</u>, Griffin) (not in F.3d or F. App'x) (quoting *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005)). While a retaliation plaintiff "is not subject to a heightened pleading standard" on the motivation criterion, "his burden is not trivial." *Johnson v. Jones*, 2010 WL 623704, *7 (W.D. Mich. Feb. 18, 2010) (Maloney, C.J.).

The Magistrate concluded that Argue satisfies the first criterion, i.e., his request for a diet consistent with his religious beliefs constitutes constitutionally protected conduct. *See* R&R at 11; *see also Carson v. Riley*, 2009 WL 2590134, *7 (W.D. Mich. Aug. 19, 2009) (Bell, J.) (treating prisoner's request for a religious diet as constitutionally protected conduct for purposes of First Amendment retaliation claim).

The Magistrate also concluded that Argue satisfies the second criterion, i.e., the apparent designation of a male prisoner as a homosexual would deter a person of ordinary firmness from continuing to request such a diet. *See* R&R at 13-14; *see also Reynolds v. Mattson*, 2008 WL 2704750, *2 (W.D. Mich. July 9, 2008) (Quist, J.) ("Denying a prisoner food would constitute an adverse action, as would falsely characterizing the prisoner as a homosexual if Plaintiff were able to show that such a label could affect a prisoner with[in] the prison environment. Accordingly, Plaintiff has sufficiently alleged an adverse action."). Because the defendants did not object to these two recommendations, the court adopts them without further review.

**Argue objects to the Magistrate's conclusion that he fails to meet the third criterion for a First Amendment retaliation claim, which requires him to show that the arguable designation of Argue as a homosexual was motivated at least in part by his requests for a special religious diet.** The Magistrate Judge wrote as follows with regard to the third criterion:

In examining this element, Defendants' subjective motivation is at issue and while

Plaintiff is not subject to a heightened pleading standard, this burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also, Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred."). Further, if the official demonstrates that she [sic] "would have taken the same action even without the protected activity," she is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

Aside from stating in conclusory fashion that he was retaliated against, Plaintiff asserts no factual allegation that his protected conduct was a motivating factor in the decision to . . . designate him as a homosexual. As Defendants observe, with respect to the causation element Plaintiff offers nothing more than "bare allegations of malice." Such fails to state a claim on which relief may be granted. *See, e.g., McMillan v. Fielding*, 136 [F. App'x] 818, 820-21 (6th Cir., June 7, 2005) (stating that dismissal for failure to state a claim is appropriate where the plaintiff's allegations regarding causation "were purely conclusory") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

R&R at 14-15.

After reiterating the Magistrate's correct statement of the law on the third criterion of a First Amendment retaliation claim, Argue objects as follows:

The magistrate admits that a retaliation claim is hard to demonstrate by [direct] evidence, [and] Plaintiff contends that the factual evidence are [sic] the denials themselves and the numerous misconduct tickets that were issued. * * * Since the Magistrate has stated for himself that there is often no direct evidence, the case should be allowed to proceed to a jury, that the jury can decide if the Defendants['] conduct amounted to retaliation.

Argue's Objections at 3. He seems to argue that the denial of his religious meal request must be viewed together with the issuance of misconduct tickets against him.

Up to a point, the court agrees that the issuance of misconduct tickets may be relevant to place the allegedly-retaliatory meal denials in context, as part of a pattern of retaliation. *See Reeves*

*v. Jensen*, 2007 WL 1464260, *3 (W.D. Mich. May 17, 2007) (Miles, J.) ("Where retaliation is claimed, '[c]ontext matters.'") (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)), *mot. for relief from judgment den.*, 2007 WL 2381942 (W.D. Mich. Aug. 17, 2007). But before a pattern can be recognized, there must be some competent evidence as to the unlawful motivation behind the individual adverse actions that allegedly comprise the pattern. The fact remains that Argue provides nothing more than "bare allegations of malice" to support his speculation that either the meal denials *or* the misconduct tickets were motivated even in part by his religious-meal request. *See Ziegler v. McGinnis*, 32 F. App'x 697, 698 (6ᵗʰ Cir. 2002) (p.c.) (Jones, Daughtrey, Cole) (§ 1983 plaintiff alleged a pattern of retaliatory actions, including numerous prison transfers and interference with his mail; affirming the dismissal of his First Amendment retaliation claim, the Circuit stated, "Ziegler alleged that the defendants retaliated against him for filing grievances by transferring him back and forth between prisons. His bare allegations of malice do not suffice to establish a constitutional claim.") (citing *Crawford-El*, 523 U.S. at 588).

For example, Argue's objections do not attempt to show that the reasons given for the misconduct tickets were false. Nor does he show that he received misconduct tickets for the behavior in question *after* he requested religious meals, but did not receive a misconduct ticket for engaging in the same or materially similar behavior before he made the request. Either of these showings, along with other evidence, might support the inference that those reasons were pretexts for unlawful retaliation. *Cf. Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 998-99 (6ᵗʰ Cir. 2009) (Suhrheinrich, Griffin, Kethledge) (reversing grant of summary judgment to employer on retaliation claim) (although defendant employer had given plaintiff negative performance appraisals over several years preceding her complaint of sex and age discrimination, she had always received her full pay raise, but three weeks after lodging the complaint she received a lower pay raise); *Jackson*

*v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (affirming district court's rejection of prisoner's claim that his September 6, 2002 initiation of a federal lawsuit against a prison guard motivated other prison officials to place him on "modified access" on October 30, 2002, rather than his repeated filing of non-compliant and frivolous grievances) ("Jackson submitted no evidence indicating that Schmeltz's actions in response to his grievances or requests for grievance forms were due to anything other than the reasons given in her various responses.").

Although temporal proximity between the protected conduct and the adverse action "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive'", *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), our circuit is generally quite reluctant to infer causation from temporal proximity alone. *See, e.g., Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (p.c.) (Batchelder, Cole, D.J. Beckwith) ("His claims rely solely on the assumption that because he filed grievances against the defendants and some time later they took actions against him, they had improper motives. Lewis's bare allegations of malice on the defendants' parts are not enough to establish retaliation claims against them."). Only in a "rare" case will temporal proximity alone suffice to create a genuine issue on causation, *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (agreeing with "other circuits, which recognize that, *in rare cases*, temporal proximity alone may suffice to show a causal connection") (citations omitted, emphasis added), and this is not such a case. The slender reed of temporal proximity, without more, cannot support the *post hoc ergo propter hoc* inference that Argue urges upon the court.[7]

---

[7]

    *See also Sosby v. Miller Brewing Co.*, 415 F. Supp.2d 809, 818 (S.D. Ohio 2005) (Watson, J.) ("The Court is hesitant to base a finding of a causal connection solely on temporal proximity alone.") (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000)), *judgment aff'd*, 211 F. App'x 382 (6th Cir. 2006).

## Argue's Equal Protection Claim Survives Against Burnett.

The Magistrate recommends holding that Argue has stated an equal-protection claim on which can be granted against Burnett and the eight other served defendants. As discussed above, Argue has not alleged that any of the eight other served defendants had any active personal involvement in Burnett's denial of his meal requests, so he has not stated an Equal Protection claim against them. Contrary to the R&R, however, this court holds that as a matter of law, the class-of-one theory of equal-protection is not available in Argue's situation.

The Magistrate correctly notes that the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cty.*, 488 U.S. 336 (1989) and *Sioux City Bridge Co. v. Dakota Cty.*, 260 U.S. 441 (1923)). The Magistrate reasons, "This statement captures the essence of Plaintiff's claim. Plaintiff alleges that Defendants have intentionally refused to provide him with kosher meals, while simultaneously providing kosher meals to similarly situated Jewish prisoners, and that there exists no rational basis for this difference in treatment." R&R at 17.

The Supreme Court recently held, however, that the "class of one" equal-protection theory does not apply when a government employee sues his employer for actions taken in its capacity as employer rather than in its capacity as lawmaker, licensor, or regulator. *See Engquist v. Oregon Dep't of Agriculture*, – U.S. –, –, 128 S.Ct. 2146, 2148-49 (2008) (Roberts, C.J., for six Justices, with Stevens, Souter, and Ginsburg, JJ., dissenting). The defendants contend that *Engquist* stands for the broader proposition that "the theory should not apply where interpersonal relationships are present because the decisions are 'subjective and individualized, resting on a wide array of factors

that are difficult to articulate and quantify.'" Defendants' Objections at 3 (quoting *Engquist*, – U.S. at –, 128 S.Ct. at 2154).  The defendants are right that the Supreme Court signaled a willingness to extend the exception to the class-of-one doctrine well beyond the government-employment context.

The Supreme Court stated,

> There are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.  In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them.  If the officer gives only one of these people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did.  But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification.  Such a complaint, rather, challenges the legitimacy of the underlying action itself – the decision to ticket speeders under such circumstances.

> Of course, an allegation that speeding tickets are given out on the basis of race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.  But allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernable or articulable reason, would be incompatible with the discretion inherent in the chosen action.  It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

> The principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. * * *

*Engquist*, – U.S. at –, 128 S.Ct. at 2154-55 (third paragraph break added).

As this court has previously explained,

*Engquist v. Oregon Dep't of Agriculture*, 553 U.S. –, 128 S.Ct. 2146 (2008),

nominally held only that the class of one theory does not apply to decisions made by government in its role as employer. But its rationale *strongly* suggests that the class-of-one theory is also unavailable in other contexts where government officials must make subjective discretionary decisions, e.g., in its role as a sovereign and regulator.

Sister courts around the country are increasingly taking this view, as in *Crippen v. Town of Hempstead*, 2009 WL 803117 (E.D.N.Y. Mar. 25, 2009), which declared without qualification,

> In addition to the two elements set forth [in *Willowbrook v. Olech*, 528 U.S. 562 (2000)], the Supreme Court recently set forth another requirement for plaintiffs bringing class of one claims. [S]pecifically . . . such plaintiffs must show that the differential treatment received resulted from *non-discretionary* state action.

*Crippen*, 2009 WL 803117 at *4 (emphasis added). *See also Seymour's Boatyard, Inc. v. Town of Huntington*, 2009 WL 1514610 (E.D.N.Y. June 1, 2009) (extending *Engquist* to bar use of the class-of-one theory to challenge town's revocation of license to operate a moor and launch from a town beach); *Tarantino v. City of Hornell*, – F. Supp.2d –, – and n.11, 2009 WL 1384983, *11 & n.11 (W.D.N.Y. May 28, 2009) (extending *Engquist* to bar class-of-one challenge to town code provisions governing rental property, due to the degree of discretion involved); *Upthegrove v. Holm*, 2009 WL 1296969, *1 (W.D. Wis. May 7, 2009) (Crabb, J.) (holding that *Engquist*'s rationale precludes application of class-of-one theory in context of prison employee's decision regarding whether inmate could wear jacket at a particular time); *Bissessur v. Indiana Univ. Bd. of Trustees*, 2008 WL 4274451, *9 (S.D. Ind. Sept. 10, 2008) (extending *Engquist* to bar use of the class-of-one theory to challenge school's decision to expel student); *Siao-Pao v. Connolly*, 564 F. Supp.2d 232, 245 (S.D.N.Y. 2008) (extending *Engquist* to bar class-of-one challenge to parole board's decision to deny parole, because of the necessarily subjective and individualized nature of such decisions); *Harmon v. St. Louis Cty.*, 2009 WL 880024 (E.D. Mo. Mar. 30, 2009) (dismissing claim that county violated equal protection by treating plaintiff worse than others who had been in automobile accidents with a county police officer, stating broadly, "a 'class of one' theory of equal protection is inapplicable in a context that involves discretionary decisionmaking.").

[*JDC*, 644 F. Supp.2d at 911 n. 5: *Cf. Galario v. Adewundmi*, 2009 WL 1227874, *14 (D. Hawaii May 1, 2009) ("Courts have been reluctant, however, to extend such class-of-one cases to situations outside of the regulatory land-use context.").]

[*JDC*, 644 F. Supp.2d at 911 n. 6: Equal-protection plaintiffs have occasionally argued that in the public-employment context (or wherever else *Engquist* might apply), *Engquist* eliminated the class-of-one theory only in cases where the state actor lacked a rational basis for the disparate treatment, but left the theory available in cases where the state actor undertook the disparate treatment in bad faith or with

personal animus. A sister court rightly rejected that notion, holding as follows:

> Lewis argues that the *Engquist* decision only eliminated class-of-one claims in employment contexts in which the defendant had no rational basis for the disparate treatment, but did not eliminate class-of-one claims in circumstances in which the defendant acted out of a spiteful or bad[-]faith motive unrelated to a legitimate objective. However, the Supreme Court made no distinction between types of class-of-one cases. * * * In addition, the plaintiff in *Engquist* alleged that the defendant employer acted out of "arbitrary, vindictive, and malicious reasons." [*Engquist*, 128 S.Ct.] at 2147. The Supreme held that she could not proceed on a class-of-one claim based on a bad[-]faith motive theory.

*Lewis v. Binegar*, 2009 WL 1272109, *2 (C.D. Ill. May 6, 2009).]

**On this view, JDC's class-of-one equal protection claim [stemming from the State's denial of applications for permits to hold charitable-gaming events operated by JDC] is barred as a matter of law, without reference to the facts of record with regard to allegedly similarly-situated entities.** *See Balakrishnan v. Kusel*, 2009 WL 1291755, * 5 (E.D.N.Y. May 8, 2009) (rejecting medical doctor's equal-protection challenge to non-renewal of his license ("CQ") to serve as a laboratory director; "DOH employees make CQ decisions on a case-by-case basis after evaluating a director's education, experience, and other relevant information, including the results of any DOH investigations into potential regulatory violations. There are no fixed rules defining when these considerations, singly or collectively, require the issuance or denial of a CQ, and therefore their assessment and balancing is inherently discretionary. Because any disparate treatment regarding the withholding of plaintiff's CQ is thus the product of discretionary state action, his 'class of one' claim fails *as a matter of law*.") (emphasis added).

Our Circuit has not yet issued a published decision extending *Engquist*'s limitation on the class-of-one doctrine beyond the government-employment context, but logic – and *Engquist*'s reasoning itself – lead the court to conclude that its limitation applies in other contexts as well, including the instant case.

[*JDC*, 644 F. Supp.2d at 912 n.7] The Supreme Court has cited *Engquist* only once so far, in a case that did not involve a class-of-one Equal Protection claim. *See DC v. Heller*, [553 U.S. 591, – n.27], 128 S.Ct. 2783, 2818 n.27 (2008) [Scalia, J.)].

*JDC Mgmt., LLC v. Reich (Michigan Lottery Commission)*, 644 F. Supp.2d 905, 910-12 (W.D.

Mich. 2009) (Maloney, C.J.) (boldface in original) (final paragraph break added).[8]

**On one hand, this court was initially reluctant to apply the restriction on the class-of-one theory to Argue's situation, which is distinguishable in some respects from the examples the Supreme Court gave in *Engquist*.** For example, the Supreme Court explained that assuming *arguendo* that "not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. Such a complaint, rather, challenges the legitimacy of the underlying action itself – the decision to ticket speeders under such circumstances." *Engquist*, – U.S. at –, 128 S.Ct. at 2154. Here, by contrast, there is no

---

[8]

For essentially the same reasons stated in *JDC*, this court respectfully declines to follow *Franks v. Rubitschun*, 312 F. App'x 764, 766 n.3 (6th Cir. 2009) (Merritt, Moore, Cole). As an unpublished panel decision, *Franks* is not binding, *Williams v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 n.4 (6th Cir.) (Griffin, J.) (citations omitted), and this court does not find it persuasive with regard to the contexts in which a class-of-one theory may be used.

The panel acknowledged that "[s]ome courts" – as urged by defendants – "have read *Engquist* broadly to suggest that individualized, discretionary decisions can rarely, if ever, be challenged in class-of-one actions." *Franks*, – F. App'x at –, 2009 WL 440364 at *2 n.3 (citing two 7th Circuit panel decisions). The panel, however, declined to go down that road:

> But *Engquist*'s holding was specifically limited to the public-employment context, the concerns of which the Court described as "unique." *Engquist*, 128 S.Ct. at 2156, 2151. And its reliance on the "crucial difference" between the government acting as sovereign and government acting as employer, *id.* [a]t 2151, suggests that *Engquist*'s discussion of discretionary decisionmaking should not control the case at hand.

*Id.* The *Franks* panel directed the district court – on remand, the undersigned judge, as it turns out – to consider whether the plaintiff-prisoner had stated a class-of-one equal protection claim with regard to his allegation that prison officials knowingly placed falsified information into his parole file while not doing the same to other prisoners seeking parole. By opinion also issued today, this court held that the class-of-one equal-protection theory is not available in prisoner Franks's situation. *See Franks v. Rubitschun*, No. 1:2006-cv-164, – F. Supp.2d –, 2010 WL _____ (W.D. Mich. Mar. 30, 2010) (Maloney, C.J.). *Cf. also Green v. Livingston*, 2009 WL 1788419, *3-5 with n.1 (W.D. Mich. June 19, 2009) (Bell, J.) (interpreting *Engquist* to bar use of class-of-one theory to challenge denial of parole, and noting that numerous other courts have taken a narrower view of the theory's applicability than *Franks v. Rubitschun*).

basis for finding that "not all" prisoners can be accorded a rational, non-arbitrary evaluation of their religious-meal requests. Complaining that one prisoner has been "singled out for no [rational] reason *does* [theoretically] . . . invoke the fear of improper government classification." *Id.* Moreover, unlike the complaint of a ticketed speeder in *Engquist*'s hypothetical, *see* – U.S. at –, 128 S.Ct. at 2154, Argue's complaint does not "challenge[] the legitimacy of the underlying action itself." That is, Argue does not purport to challenge DOC's policy and practice of investigating religious-meal requests for sincerity and necessity rather than simply granting all such requests credulously.

On the other hand, Burnett's evaluation of Argue's religious-meal request was necessarily "subjective and individualized" – like the government-employment decisions in *Engquist*. Because the evaluation of a prisoner's religious-meal request necessarily entails an assessment of the prisoner's sincerity and credibility, it can be said that the evaluation "rest[s] on a wide array of factors that are difficult to articulate and quantify", *Engquist*, – U.S. at –, 128 S.Ct. at 2155, the characteristic which formed much of the rationale for *Engquist*'s prohibition on the class-of-one theory in the government-employment and speeding-ticket contexts.

In short, contrary to the R&R, the court holds as a matter of law that the class-of-one theory of equal protection does not apply in Argue's situation. Therefore, his equal-protection claim against Burnett must be dismissed for failure to state a claim on which relief can be granted (without regard to the strength of the evidence to support his allegation that Burnett denied his kosher-meal request while granting other inmates' like requests without a rational explanation for the difference).[9]

_____

[9]

Sixth Circuit Court of Appeals decisions issued since *JDC* (W.D. Mich. July 2009) (Maloney, C.J.) have done nothing to undermine *JDC*'s reasoning. The Sixth Circuit has not

# ORDER

Accordingly, having reviewed the complaint, the motion briefs, the R&R, the plaintiff's objections, and the defendants' objections:

Plaintiff's objections [document **#41] are OVERRULED**.

Defendants' objections [doc. **# 32] are SUSTAINED in part and OVERRULED in part**.

The R&R [document **#27] is ADOPTED in part and REJECTED in part.**

The summary-judgment motion of defendants Burnett, Chaffee, Harry, Henry, Armstrong, Anderson, Berghuis, Smith, and Minnerick **[#19] is GRANTED in part and DENIED in part**.

**The court takes the following actions recommended by the R&R:**

–    Pursuant to FED. R. CIV. P. 4(m), the complaint is **dismissed without prejudice as to defendants Shields, Swierenga, Bradford, Malone, Aardsma, and D'Epifanio;**

–    **All claims for damages against all defendants in official capacities are DISMISSED** for failure to state a claim on which relief can be granted;

–    **All retaliation claims are DISMISSED** for failure to state a claim on which relief can be granted;

–    The First Amendment / RLUIPA claim **survives against defendant Burnett.**

**The court takes the following actions *contrary* to the R&R:**

–    The First Amendment / RLUIPA claims are **DISMISSED** as to eight defendants:

_____

allowed the use of the class-of-one theory in situations like Argue's, but rather in unrelated situations which do not suggest that the theory should be available in his challenge to the prison's discretionary denial of his request for a religious diet. *See, e.g., Briner v. City of Ontario*, – F. App'x –, 2010 WL 1141152, *22 (6th Cir. Mar. 26, 2010) (C.J. Batchelder, Kennedy, McKeague) (only Sixth Circuit Court of Appeals decision in 2010 so far to mention the class-of-one theory) (in case claiming selective enforcement of local ordinance against posting signs, panel held, without discussion, that plaintiff was entitled to survive summary judgment on class-of-one equal-protection claim, as "[e]vidence was submitted to the district court that Mr. Strickler admitted this was the *only* time he had ever sought to have a political sign removed or to prosecute someone for posting such a sign.").

Armstrong, Anderson, Berghuis, Smith, Minnerick, Chaffee, Harry, and Henry.

– The Equal Protection claims are **DISMISSED** as to nine defendants: Armstrong, Anderson, Berghuis, **Burnett**, Smith, Minnerick, Chaffee, Harry, and Henry.

**The only claim remaining is** the RLUIPA claim (Comp ¶ 37) as against Burnett.

This is <u>not</u> a final order. *See Griffin v. Reznick*, – F. Supp.2d –, 2008 WL 5110528, *10 (W.D. Mich. 2008) (Maloney, C.J.) ("Absent certification of an interlocutory appeal under 28 U.S.C. 1292(b) or FED. R. CIV. P. 54(b), an order disposing of fewer than all parties or claims is nonappealable.") (citing, *inter alia, Wm. B. Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978))).

**IT IS SO ORDERED this 1st day of April, 2010.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge