UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHANNON ARGUE,

        Plaintiff,                                  Hon. Paul L. Maloney

v.                                                Case No. 1:08 CV 186

DAVE BURNETT, et al.,

        Defendants.

_____/


**REPORT AND RECOMMENDATION**

This matter is before the Court on <u>Defendant's Motion to Dismiss</u>. (Dkt. #69). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted in part and denied in part**.


**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On June 5, 2005, Plaintiff, who was incarcerated at the Brooks Correctional Facility (LRF), requested that he be transferred to a facility at which he could attend Jewish religious services. (Dkt. #1, Ex. B). On June 26, 2005, Plaintiff executed a "Declaration of Religious Preference" form in which he claimed to be a member of the "Jewish" faith group. (Dkt. #1, Ex. A). On July 15, 2005, Defendant Burnett denied Plaintiff's request to receive Kosher meals. (Dkt. #1 at ¶ 3; Dkt. #1, Ex. D). Plaintiff subsequently "appealed" the matter to Defendants Smith, D'Epifanio, and Berghuis without success. (Dkt. #1 at ¶ 6).

Petitioner was later transferred to another facility in retaliation for "his constant requests to be placed upon a Kosher diet." (Dkt. #1 at ¶ 7). After a "short period of time" Plaintiff was transferred back to LRF. (Dkt. #1 at ¶ 8). Upon his return to LRF, Plaintiff again requested that he be permitted to receive Kosher meals. (Dkt. #1 at ¶ 8). Plaintiff "never received a response" to his request. (Dkt. #1 at ¶ 8).

On January 10, 2006, Plaintiff wrote to Defendant Chappee requesting a transfer because he was "being denied" the ability to participate in Jewish religious services and receive Kosher meals. (Dkt. #1, Ex. E). On July 10, 2006, Plaintiff again requested that he be transferred to a facility that "could accommodate his religious dietary needs." (Dkt. #1 at ¶ 22). Plaintiff was later transferred to the Muskegon Correctional Facility (MCF). (Dkt. #1 at ¶ 21). On or about August 10, 2006, Plaintiff submitted a request to the MCF Chaplain requesting that he be permitted to receive Kosher meals. (Dkt. #1 at ¶ 24). Defendant Burnett denied Plaintiff's request on August 18, 2006. (Dkt. #1, Ex. J).

On September 9, 2006, Plaintiff sent a letter to several Defendants (as well as MDOC Director Patricia Caruso) requesting that he "be allowed to follow his religious beliefs and practices." (Dkt. #1 at ¶ 28). In this letter, Plaintiff alleged that Defendant Burnett had improperly denied his requests to receive Kosher meals. (Dkt. #1, Ex. L). On September 14, 2006, Defendant Harry responded to Plaintiff's letter, informing Plaintiff that

> Regarding your Kosher Meal denial, you will need to take this issue up with Dave Burnett, Special Activities Coordinator, CFA, Lansing. Mr. Burnett is in charge of determining whether a prisoner will be allowed to participate in the Kosher Diet. You should send your appeal to him for reconsideration.

(Dkt. #1, Ex. M).

On September 26, 2006, Plaintiff wrote to Defendant Burnett again requesting that he be permitted to receive Kosher meals. (Dkt. #1, Ex. N). Plaintiff has not indicated whether Defendant Burnett approved or disapproved this particular request.

On February 26, 2008, Plaintiff initiated the present action against fifteen individuals. Plaintiff asserts that Defendants have violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying his requests to receive Kosher meals. Plaintiff asserts that Defendants transferred him from the Brooks Correctional Facility for improper retaliatory reasons. Plaintiff also asserts that Defendants' actions have denied him the right to the equal protection of the law. Finally, Plaintiff claims that Defendants have slandered him by falsely claiming that he is homosexual. Plaintiff has sued Defendants in their personal and official capacity, seeking monetary and injunctive relief. Specifically, Plaintiff requests more than twelve million dollars ($12,000,000.00) in damages as well as an injunction that he be permitted to receive kosher meals.

Plaintiff's claims have all since been dismissed, save: (1) Plaintiff's RLUIPA claims for monetary and injunctive relief against Defendant Burnett in his personal capacity, and (2) Plaintiff's RLUIPA claims for injunctive relief against Defendant Burnett in his official capacity. Defendant Burnett now moves the Court to dismiss these remaining claims.

## **RELEVANT LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

To prevail on a Rule 12(b)(6) motion, Defendant must demonstrate that it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. As the Supreme Court recently stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545. As the Court subsequently explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty*

*v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.        Exhaustion**

Plaintiff submitted with his complaint copies of three grievances he pursued regarding the circumstances which prompted the present action. (Dkt. #1, Exhibits F, H, and K). Defendant asserts that two of these grievances fail to properly exhaust any claim as to him. Plaintiff has not alleged that he filed any other grievances concerning the claims asserted in his complaint.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an

agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).

In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. This policy provides that before submitting a written grievance, the inmate is required to "attempt to resolve the issue" with the staff member involved within two business days after becoming aware of a grievable issue. The policy further provides that if resolution is not obtained, the inmate must file a written grievance within five business days.

### A. Grievance LRF-06-01-00103-20e (Dkt. #1, Exhibit F)

Plaintiff filed this grievance on January 20, 2006, asserting that he was "entitled to 'kosher' meals." Plaintiff asserted this grievance against several prison officials, but neither identified nor asserted allegations against Defendant Burnett. Thus, this grievance fails to exhaust any claim against Defendant Burnett. In his unsworn response to the present motion, Plaintiff asserts that his

failure to exhaust his administrative remedies should be excused because the grievance process was "unavailable." Plaintiff's arguments in this regard are unpersuasive and, more importantly, are not supported by any evidence.

B.     Grievance LRF-06-02-00243-28b  (Dkt. #1, Exhibit H)

Plaintiff filed this grievance on February 20, 2006, challenging the refusal by prison officials to transfer him to a prison at which Jewish worship services are conducted. Plaintiff asserted this grievance against several prison officials, but neither identified nor asserted allegations against Defendant Burnett. Moreover, Plaintiff's claim against Defendant Burnett is not based on an alleged failure to obtain transfer to a facility at which Jewish worship services are conducted. This grievance, therefore, fails to exhaust any claim against Defendant Burnett. In his unsworn response to the present motion, Plaintiff asserts that his failure to exhaust his administrative remedies should be excused because the grievance process was "unavailable." Plaintiff's arguments in this regard are unpersuasive and, more importantly, are not supported by any evidence.

C.     Grievance MCF-06-09-00680-20e  (Dkt. #1, Exhibit K)

Plaintiff filed this grievance on September 4, 2006, challenging the denial of his request to receive kosher meals. Plaintiff asserted this grievance against several individuals, including Defendant Burnett, and pursued the matter through all three steps of the grievance process. Defendant concedes that this grievance properly exhausts Plaintiff's claim that on August 18, 2006, he denied Plaintiff's request to receive kosher meals.

Accordingly, the undersigned recommends that the only claim against Defendant Burnett that has been properly exhausted is Plaintiff's RLUIPA claim that on August 18, 2006, Defendant Burnett denied his request to receive kosher meals. The undersigned recommends that all other remaining claims against Defendant Burnett be dismissed without prejudice for failure to exhaust administrative remedies.

## II.    Personal Capacity Claims

As noted above, Plaintiff has sued Defendant Burnett in his personal capacity, seeking monetary and injunctive relief for alleged violation of his RLUIPA rights. Defendant argues that Plaintiff's claims asserted against him in his personal capacity must be dismissed.

As Defendant correctly notes, Plaintiff is barred from recovering monetary damages against him in his personal capacity for alleged violations of RLUIPA. *See Dawson v. Burnett*, 631 F.Supp.2d 878, 887-93 (W.D.Mich. 2009) (Maloney, C.J.). As previously noted, Plaintiff also seeks an injunction that he be permitted to receive kosher meals. Such claims, however, are properly asserted against a prison official in his *official* capacity. The undersigned recommends, therefore, that Plaintiff's personal capacity claims (for both monetary and injunctive relief) against Defendant Burnett for violation of RLUIPA be dismissed.

## III.    Official Capacity Claims

Plaintiff's claims seeking monetary damages against Defendant Burnett in his official capacity were previously dismissed pursuant to the Eleventh Amendment. Defendant now seeks dismissal of Plaintiff's claims for injunctive relief asserted against him in his official capacity.

Specifically, Defendant asserts that such claims must be dismissed because he is not the proper party against whom the requested relief can be obtained.

Plaintiff initiated the present action on February 26, 2008. Defendant Burnett has submitted an affidavit in which he asserts that from February 1995 through December 29, 2007, he was employed by the MDOC as the "Special Activities Coordinator of the Correctional Facilities Administration for the Michigan Department of Corrections." (Dkt. #82). Burnett asserts that in this capacity his responsibilities included "coordinating religious programming." Burnett asserts that he retired from the MDOC on December 29, 2007. *Id.* Defendant asserts, therefore, that "as a retiree at the time this lawsuit was filed, [he] was not a proper party for any 'official capacity' claim per FRCP 17(d) and FRCP 25(d) and he should be dismissed entirely from this case." This single sentence represents the entirety of Defendant's argument and analysis on this issue.

Federal Rule of Civil Procedure 17(d) provides that "[a] public officer who sues or is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added." Federal Rule of Civil Procedure 25(d) provides, in relevant part, that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending," rather, "[t]he officer's successor is automatically substituted as a party."

In his complaint Plaintiff, states that he is suing Dave Burnett, the "Correctional Facilities Administration, Special Activities Director." There can be no question, therefore, that to the extent Plaintiff seeks relief from Burnett in his official capacity he is in reality seeking relief from the "Correctional Facilities Administration, Special Activities Director." In light of the fact that Defendant Burnett is now retired from his position with the MDOC, he is no longer the appropriate party from

whom Plaintiff can obtain the injunctive relief he seeks. Defendant Burnett completely fails to address whether his successor should be substituted in his place in this action, although by citing to Rule 25(d) it appears that Defendant concedes that such is the appropriate course of action.

The Court recognizes that because Defendant Burnett retired prior to the initiation of this action, an argument can perhaps be made that Rule 25(d) is inapplicable because Burnett was never a proper party from whom to obtain prospective injunctive relief, thus rendering the succession provision of Rule 25(d) inapplicable. To the extent that Defendant is asserting such a position, the Court is unpersuaded.

First, such an argument represents an unreasonable interpretation of Rule 25(d). Secondly, Rule 17(d) expressly provides that an official capacity action is proper if simply asserted against the office, the holder of which is the proper party from whom relief can be obtained. Plaintiff made clear in his complaint that to the extent he seeks relief from Burnett in his official capacity he is in reality seeking relief from the "Correctional Facilities Administration, Special Activities Director." That Plaintiff misidentified the name of the individual who then held that position is, in the Court's opinion, of no consequence. Plaintiff's action was properly asserted against the "Correctional Facilities Administration, Special Activities Director." To the extent, that Plaintiff incorrectly identified Defendant Burnett as the individual in that position, Defendant needed only to bring such to the Court's attention. Defendant Burnett has now done so, albeit more than two years after this action was initiated and after asserting a previous dispositive motion in which this issue was not addressed.

Accordingly, the undersigned recommends that to the extent Plaintiff seeks relief from Defendant Burnett in his official capacity, Burnett be dismissed from this action and his successor as Special Activities Coordinator be substituted in his place to defend such claims.

## **CONCLUSION**

As discussed herein, the undersigned recommends that <u>Defendant's Motion to Dismiss</u>, (dkt. #69), be **granted in part and denied in part**.

Specifically, the undersigned recommends that: (1) Plaintiff's claims against Defendant Burnett be dismissed without prejudice for failure to exhaust administrative remedies, save his claim that on August 18, 2006, Defendant Burnett denied his request to receive kosher meals; (2) Plaintiff's personal capacity claims (for both monetary and injunctive relief) against Defendant Burnett for violation of RLUIPA be dismissed; and (3) to the extent Plaintiff seeks relief from Defendant Burnett in his official capacity, Burnett be dismissed from this action and his successor as Special Activities Coordinator be substituted in his place to defend such claims.

The undersigned further recommends that within 28 days of the adoption of the recommendation that Defendant Burnett be dismissed from this action and his successor as Special Activities Coordinator be substituted in his place, counsel for Defendant Burnett submit to the Court the name and business address of Defendant Burnett's successor so that the case caption can be corrected and this case proceed against the appropriate defendant.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                              Respectfully submitted,

Date: January 18, 2011                               /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge